# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 12, 2018

Plaintiff-Appellee,

v

No. 336840
Wayne Circuit Court
LC No. 16-007007-01-FH

DARRYL JEROME KIRBY,

Defendant-Appellant.

Before: SAWYER, P.J., and HOEKSTRA and MURRAY, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of second-degree criminal sexual conduct ("CSC-II"), MCL 750.520c(1)(a), and indecent exposure, MCL 750.335a. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 15 to 30 years' imprisonment for the CSC-II conviction and to time served (142 days) for the indecent exposure conviction. The trial court additionally ordered defendant to pay $1,300 in court costs and $400 in attorney fees. We affirm defendant's convictions, but remand for determination of the factual basis for the costs imposed.

Defendant was convicted of sexually assaulting his 10-year-old granddaughter. At trial, the victim testified that during the late evening hours of a date in July 2015, defendant touched and fondled her breasts while her mother, aunt, and very young cousin were asleep in the adjoining living room. The victim further testified that defendant then lowered his shorts, exposed his genitals, and masturbated in front of her. The defense theory at trial was that the victim's accusations were not credible. In support of this theory, the defense presented a photograph of defendant's genitals to attack the victim's description of the color of defendant's genitals. The jury convicted defendant as charged.

Defendant raises several issues on appeal in both a brief filed on defendant's behalf by his appointed appellate counsel and in a pro se brief filed by defendant pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4. We will first address defendant's issues in his Standard 4 brief.

Defendant first argues in his Standard 4 brief that the preliminary examination transcript is not accurate because it does not reflect that the victim recanted her allegations and testified that defendant did not touch her breasts. It is undisputed that testimony of this nature is not included in the preliminary examination transcript. Defendant asserts that the transcript was

inaccurately transcribed and, had the court appointed an expert to compare the video and audio recording of the hearing to the transcription, errors in the transcript would have been revealed. Defendant argues that the trial court's failure to appoint an investigator for this purpose deprived him of the opportunity to present the victim's prior inconsistent testimony to the jury. We find no merit to this issue.

In *People v Carnicom*, 272 Mich App 614, 617; 727 NW2d 399 (2006), this Court explained that to obtain appointment of an expert, an indigent defendant "must demonstrate a nexus between the facts of the case and the need for an expert." The Court went on to explain that "[i]t is not enough for the defendant to show a mere possibility of assistance from the requested expert," a defendant must show that the expert "would likely benefit the defense[.]" *Id*. Without this showing, a trial court does not abuse its discretion when denying a motion for the appointment of an expert witness. *Id*.

Furthermore, in the context of court transcripts, a certified transcript is presumed accurate. *People v Abdella*, 200 Mich App 473, 475; 505 NW2d 18 (1993). The court reporter in this case certified that the preliminary examination transcript was "a complete, true, and correct record of the recording of the preliminary examination taken in this case[.]" To overcome the presumption of accuracy, a party is required to "(1) seasonably seek relief; (2) assert with specificity the alleged inaccuracy; (3) provide some independent corroboration of the asserted inaccuracy; [and] (4) describe how the claimed inaccuracy in transcription has adversely affected the [party's] ability to secure . . . relief[.]" *Abdella*, 200 Mich App at 476. The independent corroboration requirement may be satisfied by, for example, "affidavits of witnesses, trial spectators, police officers, court personnel, or attorneys . . . or perhaps to trial circumstances that demonstrate the position of the petitioner[.]" *Id.* at 476 n 2.

Applying the foregoing principles, the trial court did not abuse its discretion by failing to appoint an expert to investigate the accuracy of the preliminary examination transcript. Defendant failed to make the necessary showing that an expert investigation of the accuracy of the transcript was necessary or would have benefited the defense. When this issue was raised before the trial court, the prosecutor specifically stated that he did not "recall anything of the victim recanting" and that it appeared that the transcript from the preliminary examination was accurate. Defendant's trial counsel similarly stated that he had no recollection of the victim saying "no" when asked if defendant touched her breasts. Indeed, it was pointed out that if the victim had recanted her accusation that defendant touched her breasts, it is unlikely that he would have been bound over for trial. The trial court even briefly adjourned the proceedings to contact the court reporter to investigate this issue. After the court reporter had an opportunity to compare an audio recording to the transcript, she reported back to the court that the existing transcript accurately reflected the testimony given at the preliminary exam.

Based on the foregoing, defendant has failed to establish that he would have benefitted from the appointment of an expert. Not only did defendant fail to offer any independent corroboration for his claim that the preliminary transcript was inaccurate, but other sources who were present at the preliminary examination expressly refuted defendant's claim of inaccuracy. Other than defendant's own recollection, there was no evidence even hinting at inaccuracies in the transcript from the preliminary exam. Accordingly, the trial court did not abuse its discretion by denying defendant's motion.

Next, defendant argues in his Standard 4 brief that he was denied his constitutional right to the effective assistance of counsel. Because defendant did not raise this issue in a motion for a new trial or an evidentiary hearing, review is limited to mistakes apparent on the record. *People v Payne,* 285 Mich App 181, 188; 774 NW2d 714 (2009). "To establish a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense." *People v Riley (After Remand),* 468 Mich 135, 140; 659 NW2d 611 (2003). "In order to demonstrate that counsel's performance was deficient, the defendant must show that it fell below an objective standard of reasonableness under prevailing professional norms. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy." *Id.* Establishing prejudice necessarily requires demonstrating a reasonable probability that the result of the proceeding would have been different but for counsel's error. *People v Nix,* 301 Mich App 195, 207; 836 NW2d 224 (2013). Defendant bears the burden of establishing the factual predicate for his argument. *People v Putman,* 309 Mich App 240, 248; 870 NW2d 593 (2015).

Defendant has not demonstrated that trial counsel was ineffective for failing to investigate the accuracy of the preliminary examination transcript. Based on the existing record, there is no credible evidence that the preliminary examination was inaccurately transcribed. Thus, trial counsel had no apparent reason to challenge the accuracy of the transcript. Even if trial counsel had pursued an investigation into the transcript preparation, there is no evidence that it would have yielded the result suggested by defendant. Trial counsel is not ineffective for failing to raise issues that would have been fruitless. *People v Cicotte,* 133 Mich App 630, 637; 349 NW2d 167 (1984).

After reviewing the record, we also conclude that there is no merit to defendant's argument that trial counsel failed to effectively cross-examine the victim in order to reveal inconsistencies between her preliminary examination testimony and her trial testimony. For the most part, defendant has not established the necessary factual predicate for this argument. That is, he has not demonstrated that the victim's trial testimony contradicted her preliminary examination testimony. The majority of the examples cited by defendant do not represent true inconsistencies in the victim's testimony. For example, defendant contends that the victim's testimony was inconsistent regarding whether the other family members were asleep or awake at the time of the sexual assault. However, the record discloses that the victim testified consistently at both the preliminary examination and at trial that all of the family members were asleep at the time of the assault. Defendant asserts that the victim's testimony was inconsistent regarding where he was allegedly standing at the time he touched her breast. According to the record, however, the victim testified at both hearings that defendant was standing to her side when he fondled her. Nearly every other example cited by defendant is similarly infirm.[1] Thus, for the

---

[1] The victim was asked at both the preliminary examination and at trial whether one could see into the kitchen from the living room. At both hearings, she testified that a person could. However, she further testified at trial that a person could only see half of the kitchen from the living room. This would explain her additional trial testimony that at the spot where defendant touched her, a person could not, from that location, see into the living room. Defendant also asserts that the victim testified inconsistently with respect to whether he touched her before or

most part, defendant has not established the factual predicate for this claim of ineffective assistance of counsel.

Defendant has only cited one true inconsistency in the victim's testimony. At the preliminary examination, the victim testified that when defendant exposed himself, he took his pants off. At trial, however, the victim testified, referring to pants and shorts interchangeably, that defendant simply pulled his pants down to his knees. Although defense counsel did not cross-examine the victim regarding this inconsistency, this omission does not establish that defendant was denied the effective assistance of counsel.

The manner in which trial counsel cross-examined the victim was a matter of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). It may be valid strategy not to vigorously cross-examine a child sexual abuse victim because counsel "might want to avoid the appearance of bullying the witness, might believe that the complainant's testimony can best be undermined by pointing out inconsistencies with other testimony, and might want to avoid elaboration on damaging points of testimony . . . ." *People v Gioglio (On Remand)*, 296 Mich App 12, 26; 815 NW2d 589 (2012), vacated in part on other grounds 493 Mich 864 (2012). Defense counsel did cross-examine the victim about the events in question, carefully drawing out the order of the events. More importantly to the defense, however, counsel specifically asked the victim about the color of defendant's penis. Presumably, this was because counsel anticipated presenting to the jury, in defendant's case in chief, a photograph of defendant's penis, for the purpose of showing that defendant's skin was darker than that described by the victim. Thus, rather than attempting to highlight minor discrepancies in the victim's testimony, defense counsel clearly intended to discredit the victim's accusations through the later introduction of the photographs. Defense counsel's approach was sound trial strategy, particularly in light of the fact that he was cross-examining a young girl about a sexual assault. "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). Accordingly, defendant has failed to demonstrate the ineffective assistance of counsel in this regard.

Finally, defendant has failed to demonstrate that counsel's failure to call defendant's daughter as a witness deprived him of the effective assistance of counsel. In his Standard 4 brief, defendant asserts that his daughter, if called, would have testified that she told the victim's mother, "I didn't see nothing like that." However, defendant has not provided any affidavit or statement from his daughter. Again, defendant has failed to establish the factual predicate for this claim. Moreover, any such statement would not support a substantial defense. If anything, it corroborates the victim's account that defendant's daughter was asleep when the events transpired, and thus would not have seen the alleged sexual assault. Moreover, counsel's failure to call defendant's daughter as a witness did not prevent defendant from presenting his defense that the victim's accusations were not credible because her description of defendant's genitals

---

after she got her oatmeal. At both hearings, however, the victim testified that defendant touched her after she got her oatmeal from the cabinet.

did not match the photographic evidence. In sum, defendant has not carried his burden of demonstrating that defense counsel's decision not to call defendant's daughter to testify was objectively unreasonable or prejudicial.

Defendant also challenges his sentence on several fronts. First, he argues that because the trial court considered his prior criminal convictions during sentencing, he was punished twice for the same crime and, therefore, his sentence violates his double jeopardy protections. This argument is without merit. It has long been held that imposing an enhanced sentence due to a consideration of a prior conviction does not constitute a second punishment for that offense. *Monge v California,* 524 US 721, 728; 118 S Ct 2246; 141 L Ed 2d 615 (1998); *United States v Mack,* 938 F2d 678, 679 (CA 6, 1991).

The trial court also did not violate his constitutional rights by relying on inaccurate information in the presentence investigation report (PSIR) to depart from the recommended minimum sentence range under the sentencing guidelines. Defendant disputes the accuracy of allegations in the PSIR that he masturbated in front of a prison guard during a previous incarceration. Before imposing its sentence, however, the trial court made minor corrections to the PSIR and then asked if any further corrections were necessary. Neither the prosecutor nor defendant had any further additions, corrections, or deletions to the PSIR. Further, defendant confirmed that he had reviewed the PSIR with his attorney and when asked if "all the factual information [was] correct in the body of the report," defendant replied, "Yes." Consequently, defendant waived any further challenge to the accuracy of the information contained in the PSIR. *People v Carter,* 462 Mich 206, 215; 612 NW2d 144 (2000).

In a related argument, defendant argues that trial counsel was ineffective for failing to object to the alleged inaccuracies in the PSIR. But because defendant acknowledged that he had reviewed the PSIR with defense counsel and stated that it was accurate, there was no basis for counsel to have objected to the contents of the PSIR. Trial counsel was not required to file a frivolous or meritless motion, and thus he will not be deemed ineffective for failing to challenge the accuracy of the PSIR. See, e.g., *People v Henry (After Remand)*, 305 Mich App 127, 141; 854 NW2d 114 (2014).

Next, defendant challenges the reasonableness of his departure sentence. Defendant's minimum sentencing guidelines range was calculated at 29 to 114 months. The trial court departed from that range and sentenced defendant to 15 to 30 years' imprisonment. This Court reviews a trial court's departure sentence for reasonableness. *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). "When reviewing a departure sentence for reasonableness, [the Court] must review 'whether the trial court abused its discretion by violating the principle of proportionality set forth' in *Milbourn*[2]." *People v Steanhouse (On Remand)*, ___ Mich App ___, ___; ___ NW2d ___ (2017) (Docket No. 318329) (*Steanhouse III*); slip op at 2, citing *People v Steanhouse*, 500 Mich 453, 477; 902 NW2d 327 (2017) (*Steanhouse II*). This Court explained in *Steanhouse III*:

---

[2] *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990).

Under the principle of proportionality standard, a sentence must be "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Milbourn,* 435 Mich at 636. As such, the sentencing court must impose a sentence that takes "into account the nature of the offense and the background of the offender." *Id.* at 651. Generally, sentences falling within the minimum sentencing guidelines range are presumptively proportionate. *People v Cotton,* 209 Mich App 82, 85; 530 NW2d 495 (1995). However, a departure sentence may be imposed when the trial court determines that "the recommended range under the guidelines is disproportionate, in either direction, to the seriousness of the crime." *Milbourn,* 435 Mich at 657. [*Steanhouse III,* ___ Mich App at ___; slip op at 2-3.]

"A trial court abuses its discretion if it violates the principle of proportionality test 'by failing to provide adequate reasons for the extent of the departure sentence imposed . . . .' " *Id.* at ___; slip op at 2 (citation omitted).

This Court in *Steanhouse III* explained the nature of a proper inquiry:

Factors that may be considered under the principle of proportionality standard include, but are not limited to:

(1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Lawhorn,* ___ Mich App ___, ___; ___ NW2d ___ (2017) (Docket No. 330878); slip op at 7 (citation and quotation marks omitted).]

An appellate court must evaluate whether reasons exist to depart from the sentencing guidelines and whether the extent of the departure can satisfy the principle of proportionality. See *Milbourn,* 435 Mich at 659-660 (recognizing that "[e]ven where some departure appears to be appropriate, the *extent* of the departure (rather than the fact of the departure itself) may embody a violation of the principle of proportionality"). Therefore, even if [sic] cases where reasons exist to justify a departure sentence, the trial court's articulation of the reasons for imposing a departure sentence must explain how the extent of the departure is proportionate to the seriousness of the circumstances surrounding the offense and the offender. See *People v Smith,* 482 Mich 292, 304; 754 NW2d 284 (2008) ("When departing, the trial court must explain why the sentence imposed is more proportionate than a sentence within the guidelines recommendation would have been."). [*Steanhouse III,* ___ Mich App at ___; slip op at 3.]

Accordingly, the first step in the review for reasonableness is to determine whether there were " 'circumstances that are not adequately embodied within the variables used to score the guidelines.' " *Id.* at ___; slip op at 3, quoting *Milbourn,* 435 Mich at 659-660.

At defendant's sentencing, the trial court initially corrected the PSIR to include the fact that defendant was to be sentenced as a fourth-offense habitual offender, which contemplated a maximum sentence of up to life in prison. In addition, the court recognized that because this was defendant's second criminal sexual conduct conviction, he was subject to a mandatory minimum sentence of five years pursuant to MCL 750.520f. With respect to the scoring of the offense variables, the court noted that a score of 10 points for offense variable 4 (psychological injury to victim) was appropriate because the victim had been experiencing bed wetting and therapy was contemplated. The prosecutor pointed out that defendant had a previous conviction for first-degree criminal sexual conduct (CSC-I), which involved the sexual assault of a 14-year-old girl during a home invasion. The prosecutor requested a minimum sentence of 15 years. In response, defendant requested that the court consider a sentence within the guidelines range and continued to attack the credibility of the victim's accusations. The trial court sentenced defendant to 15 to 30 years in prison for his CSC-II conviction, commenting as follows:

> What I'm disturbed by – I'm disturbed by a lot of things in this case – the fact that this was your granddaughter, the fact that you've had a CSC 1st in the past with regard to a breaking and entering, and then there was a detailed incident in here of when you were in custody of staring at the prison guard and masturbating while staring at the prison guard. And that seems awfully similar to what happened in this case.

> I read over this Presentence Report very carefully. All of these things concern me greatly. And I know that the guidelines are helpful, but they are also advisory at this point, and it leaves it to my discretion.

> I don't believe that these guidelines really take into account that danger you pose to society based on this is a third incident of a sexual nature like this, including the one that happened while you were in prison. I am very concerned for the safety of individuals should you be released. And I don't think that you learned from the first time you were in prison, and it's very concerning to me.

> So it is the sentence of this Court, sir, that you be sentenced to a period of incarceration of 15 years to 30 years in the Michigan Department of Corrections based on the Fourth Habitual Offense Notice that was filed. And you will receive 142 days' credit for time already served.

We conclude that the trial court did not violate the principle of proportionality when imposing its sentence.

To justify defendant's sentence, the court noted the circumstances related to the nature of the crimes at issue and defendant's background. It commented that the guidelines failed to account, or inadequately accounted for, several compelling factors. First, the court noted that defendant had victimized his own granddaughter. The relationship between the victim and the aggressor is a factor not considered by the guidelines. *Steanhouse III,* ___ Mich App at ___; slip op at 3. The court specifically cited the *circumstances* related to defendant's prior criminal convictions. Although prior record variables 2 and 3 consider prior convictions, these variables did not take into account the nature of the prior offenses. The PSIR documented defendant's

criminal conviction in 1993 for breaking and entering and CSC-I. The victim of these offenses was a 14-year-old girl. Further, the court noted that defendant clearly had not learned from his prior incarceration. The PSIR also referenced defendant's conduct while in custody. In a prior incarceration, defendant was cited for sexual misconduct. It was noted that defendant intentionally left the shower curtain open and was masturbating while staring directly at a prison guard. The trial court noted that this incident was substantially similar to the events in the present case. The court also considered defendant's lack of remorse and his apparent belief that he had not done anything wrong. Again, these were proper considerations because a defendant's potential for rehabilitation, his misconduct in custody, and his lack of remorse are all factors not considered by the guidelines. *Id.*

The court also expressed concern for the public should defendant be released. It noted that defendant's history was demonstrating a pattern and proclivity. The court did not err in considering the need to protect other children as another factor not adequately considered by the guidelines. See, e.g., *People v Armstrong*, 247 Mich App 423, 425; 636 NW2d 785 (2001).

Departure sentences may be imposed when the trial court determines that the recommended range under the guidelines is disproportionate to the seriousness of the crime. *Steanhouse III*, ___ Mich App at ___; slip op at 2-3. Considering the record as a whole, the trial court took into account the nature of the offense and the background of the offender. It recognized the serious victimization of defendant's granddaughter and the danger defendant posed to society, especially considering his history of sexual offenses against children. It concluded that a sentence within the guidelines range would not adequately protect society. We are satisfied that the sentence imposed by the trial court is reasonable because it is "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Milbourn*, 435 Mich at 636.

Finally, defendant challenges the imposition of court costs. Because defendant did not object to the imposition of court costs at sentencing, this issue is not preserved. *People v Johnson*, 315 Mich App 163, 197; 889 NW2d 513 (2016). This Court reviews an unpreserved "challenge to the trial court's imposition of court costs for plain error." *People v Konopka (On Remand)*, 309 Mich App 345, 356; 869 NW2d 651 (2015).

After a criminal conviction, MCL 769.1k(1)(b)(*iii*) authorizes the trial court to impose "any cost reasonably related to the actual costs incurred by the trial court without separately calculating those costs involved in the particular case[.]" This Court concluded in *Konopka*, 309 Mich App at 358, that "MCL 769.1k(1)(b)(*iii*) independently authorizes the imposition of costs in addition to those costs authorized by the statute for the sentencing offense." However, the Court also noted that if the trial court does not establish a factual basis for the costs, appellate review of whether the costs were reasonably related to the actual costs incurred is impeded. *Id.* at 359-360.

In this case, the trial court ordered defendant to pay $1,300 in court costs and $400 in attorney fees, but it did not provide a factual basis for the costs and fees imposed. Accordingly, plaintiff concedes, and we agree, that remand is appropriate to afford the trial court an opportunity articulate a factual basis for the costs, to allow defendant to challenge the reasonableness of the costs imposed, and to permit the trial court the opportunity to alter the

amount if appropriate.  *Id.* at 360; see also *People v Stevens*, 318 Mich App 115, 120-121; 896 NW2d 815 (2016).

We affirm defendant's convictions and his sentence of 15 to 30 years for CSC-II, but remand for the trial court to articulate a factual basis for its imposition of costs.  We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Joel P. Hoekstra
/s/ Christopher M. Murray